# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| Jesse Hemingway,<br>    Plaintiff, | )<br>)<br>) |
| v. | )     1:17cv208 (TSE/TCB) |
| | ) |
| Miss Chatman, et al.,<br>    Defendants. | )<br>)<br>) |

## MEMORANDUM OPINION

Jesse Hemingway ("Hemingway" or "Plaintiff") filed a civil action under 42 U.S.C. § 1983 and the Federal Tort Claims Act (FTCA), 28 U.S.C §§ 1346(b), 2671-80, in February 2017 challenging his medical treatment while confined at the Federal Correctional Complex in Petersburg, Virginia ("FCC-Petersburg"). Following several orders on various motions in 2017, Hemmingway filed an appeal to the Fourth Circuit Court of Appeals. The Fourth Circuit dismissed the appeal as interlocutory and remanded the matter to this Court. On January 19, 2018, Hemmingway was granted leave to amend his complaint and the amended complaint was filed and summonses were issued, but service was perfected on only four of the eleven defendants.[1] [Dkt. Nos. 42, 43]. The served defendants filed motions for summary judgment and Hemmingway responded to those motions. The Court granted the motions for summary judgment in a series of orders, as well as a memorandum opinion, in November 2018 and closed

---

[1] The operative complaint in this matter is the amended complaint filed on February 6, 2018 [Dkt. No. 43], which named eleven defendants: the United States of America; HSA Chatman; AHSA M. Francos, HSA – Trainee Scott-Boston; Dr. M. DiCocco; Dr. Piscitelli; Andarge Yirga; LPN Amber McCaferthy; DNP/FNP Winbush; FNP/MSN T. McClellan; and Dr. K. Prakash. Service was perfected on the United States, Dr. DiCocco, Chatman, and Scott-Boston, but not on defendants Francos, Dr. Piscitelli, Yirga, McCaferthy, Winbush, McClellan, and Dr. Prakash. On November 30, 2018, the unserved defendants were dismissed without prejudice. [Dkt. No. 91]. Hemmingway had been warned that if service could not be perfected within 90 days on any defendant that the defendant would be dismissed without prejudice. [Dkt. No. 44]. Summonses were sent by certified mail on March 14, 2018 to each of the eleven defendants. [Dkt. Nos. 47, 48]. A number of the summonses were resent on April 25, 2018 because they had inadvertently been sent to the wrong address on March 14, 2018. [Dkt. Nos. 57, 58].

this civil action on November 30, 2018. [Dkt. Nos. 86, 87, 88, 91]. Hemmingway appealed and the Fourth Circuit dismissed the appeal for lack of jurisdiction.

In dismissing the appeal, the Fourth Circuit found that no final order had been entered because the series of November 2018 orders and Memorandum Opinion had not addressed Hemmingway's claim that he had received inadequate treatment at FCC-Petersburg for an injury to his right fifth toe that occurred after the amputation of another toe in July 2017. The matter was remanded to this Court in order that it could rule on that single claim. The Court invited the defendants to file a dispositive motion, and they filed a motion for summary judgment. [Dkt. No. 113]. Hemmingway was notified of right to file a response [Dkt. No. 120], but has not done so. After reviewing the record, the Court finds that Hemmingway is not entitled to relief on the claim alleging inadequate medical care for his right fifth toe, and judgment will be entered in favor of the defendants.

## I. Procedural History

Following the unsuccessful interlocutory appeal, the Court granted Hemingway leave to file an amended complaint, which he filed on February 6, 2018. [Dkt. Nos. 42, 43]. The amended complaint named the United States and ten other defendants. Summonses were issued and dispositive motions were filed by the United States, Mark DiCocco, M.D., Health Service Administrator Allison Chatman, and Health Service Administrator Addie Scott-Boston. [Dkt. Nos. 67-68, 73-74, 79-80]. Hemmingway was notified of and afforded the opportunity to respond pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) [Dkt. Nos. 69, 70, 75, 81], and did so. [Dkt. Nos.71].

The Court granted the defendants motions for summary judgment in three Orders — two were dated November 14, 2018 [Dkt. Nos. 86, 88], and the other was dated November 30, 2018.

[Dkt. No. 91]. In the first November 14, 2018 Order, which concerned Hemmingway's Federal Torts Claim, the Court granted the United States motion for summary judgment and dismissed that claim without prejudice because Hemmingway had failed to exhaust his administrative remedies. [Dkt. No. 86 at 4]. In a Memorandum Opinion issued the same day, the Court determined that DiCocco's motion for summary judgment should be granted on both Hemmingway's <u>Biven</u>'s claim that alleged defendant DiCocco had been deliberately indifferent to his diabetes and the treatment of his right great toe that had been amputated [Dkt. 87 at 13], and on Hemmingway's second claim alleging retaliation because Hemmingway had not exhausted his administrative remedies. [<u>Id.</u> at 14-15]. The second November 14, 2018 Order granted the motion for summary judgment. [Dkt. No. 88].

In the November 30, 2018 Order, the Court granted the motion for summary judgment filed by defendants Chatman and Scott-Boston, the only two remaining defendants in the civil action. [Dkt. No. 91 at 2]. With regard to his medical care, the Court found the undisputed facts established that neither Chatman or Scott-Boston provided any medical care to Hemmingway while he was at FCC-Petersburg; Hemmingway refused to let Scott-Boston provide him with any care; Hemmingway was consistently provided with treatment for his diabetes and foot while at FCC-Petersburg; and that Hemmingway was noncompliant with his insulin regimen. [<u>Id.</u> at 4]. Accordingly, the Court found that neither Chatman nor Scott-Boston were deliberately indifferent to Hemmingway's treatment for diabetes or for the treatment of his foot. [<u>Id.</u> at 5]. The November 30, 2018 Order also dismissed the seven non-served defendants. <u>See</u>, <u>supra</u> at note 1. The Clerk entered judgment in favor of Chatman and Scott-Boston on December 3, 2018. [Dkt. No. 92]. Hemmingway appealed.

The Fourth Circuit dismissed the appeal for lack of jurisdiction, <u>Hemmingway v. Miss</u>

Chattman, et al., No. 18-7470 (4th Cir. Sept. 12, 2019); [Dkt. No. 108], noting this Court's November 2018 orders had not resolved all of Hemmingway's claims, and was therefore not a final order. [Id. at 2] (citation omitted). Specifically, while this Court had construed Hemingway's

> operative second amended complaint as alleging deliberate indifference to his serious medical needs pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), and medical malpractice claims pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 (2012), specifically related to the type of insulin he was provided and the treatment he received for an injury to his foot that culminated in the amputation of his right great toe in July 2017.... that Hemingway's claims regarding his medical treatment also challenged the treatment he received for a subsequent injury to his right fifth toe following the July 2017 amputation.

[Id. at 4]. The Fourth Circuit found the third claim involving the right fifth toe had not been ruled upon and therefore dismissed the appeal for lack of jurisdiction, and remanded the matter for consideration of Hemingway's claim regarding his 5th toe. [Id.].

Following the remand from the Fourth Circuit, in order to address the claim regarding the right fifth toe, this Court vacated its prior judgment [Dkt. No. 92], and the Orders of November 14 and 30, 2018 [Dkt. Nos. 86, 88, 91], but only to the extent they dismissed the defendants from this civil action. [Dkt. No. 112]. The Court also directed the served defendants (the United States and defendants DiCocco, Chatman, and Scott-Boston) to file motions for summary judgment or other dispositive motions, which were filed on April 21, 2020. [Dkt. No. 113-14]. Hemmingway complained he had not been served with any dispositive motions, and the Court directed the Clerk to provide a copy of the dispositive motions, accompanying documents, and the Roseboro notice to Hemmingway on January 11, 2021. [Dkt. 120]. On March 2, 2021, Hemmingway filed a motion for extension of time to respond to the motion for summary judgment, which the Court granted on March 3, 2021. [Dkt. No. 122]. Hemmingway's response was due on or before April 2, 2021.

The March 3, 2021 order also stayed this matter until further order of the Court. On June 10, 2021, the Court vacated the March 3, 2021 stay. [Dkt No. 123]. Despite having over five months since being served with the motion for summary judgment in January 2021, Hemmingway has not responded. The matter is therefore ripe for disposition, and for the reasons that follow, the defendants' motion for summary judgment must be granted. Further, the prior vacated Orders of November 14 and 30, 2018 [Dkt. Nos. 86, 88, 91] will be reinstated, and this matter must be dismissed.

## II. Amended Complaint's References to Plaintiff's Right Fifth Toe

The operative complaint references plaintiff's 5th toe with regard to claims against three defendants. Plaintiff first mentions the 5th toe in the heading of the claim against served defendant Dr. DiCocco within the context of deliberate indifference to a medical need, and the allegations in the amended complaint are summarized as follows:

- On July 17, 2017, plaintiff put in a request for records to Mrs. Nazar, but did not receive certain reports/records because the provider (John Randolph Medical Center) would not send them. In an undated discussion with Dr. DiCocco, plaintiff complained about not getting the records of an MRI, and that the report had not found "the fracture to [his] right fifth toe," and stated that there were "no fractures anywhere on [his] right foot," which plaintiff states was "a lie." [Dkt. No. 43 at 12-13].

The second time plaintiff mentions the 5th toe is under the heading associated with defendant McClellan, who has not been served, and it is mentioned in the context of deliberate indifference. That portion of the amended complaint is summarized as follows:

- At some time after May 24, 2017 and prior to August 7, 2017, plaintiff told Miss McClellan "about his 5th toe probably being broken," but it took until August 14, 2017 (after his right big toe was amputated) before Nurse Sarah Ramsey arranged for plaintiff to see Dr. Piscitelli. On August 18, 2017, an x-ray was taken, and plaintiff was told there was a "hairline fracture [and] that nothing could be done about [it]." [Id. at 16]. Plaintiff requested a second

5

opinion and an MRI to be sure osteomyelitis[2] had not spread to that toe. Nurse Sarah Ramsey never requested the MRI. [Id.].

The third time the plaintiff mentions the 5th toe is under the heading associated defendant Dr. Prakash, who has not been served, in the context of medical malpractice/negligence. That portion of the amended complaint is summarized as follows:

- On July 5, 2017, an MRI revealed that plaintiff had an "acute fracture at the dorsal phalanx of the fifth toe." [Id. at 18].[3] Upon return to the prison, plaintiff was told by Miss McClellan, Dr. Piscitelli, Dr. DiCocco, Dr. Prakash, Mrs. Francos and Miss Chatman that he "had osteomyelitis." [Id. at 19]. On August 18, 2017, Dr. Piscitelli told plaintiff the "5th toe was fractured" and not "completely broken" as plaintiff believed. [Id.]. Dr. Piscitelli referred plaintiff to Dr. Prakash, who declined to see plaintiff. Plaintiff was eventually seen by Dr. DiCocco who determined plaintiff did not have osteomyelitis, did not refer plaintiff for an MRI but did refer him for an x-ray. After the x-ray, Dr. DiCocco recommended a "bone be removed from [plaintiff's] 5th" toe. [Id.]. Plaintiff later learned he had exostosis.[4]

### III. Undisputed Material Facts

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendants, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, set forth a statement of material facts that defendants contend are undisputed.[5]

---

[2] "Osteomyelitis is a bone infection usually caused by bacteria, mycobacteria, or fungi." Merck Manual Consumer Version, (https://www.merckmanuals.com/home, last viewed June 28, 2021) (search osteomyelitis). "Most osteomyelitis results from direct invasion or infections in nearby soft tissues (such as a foot ulcer caused by poor circulation or diabetes)." Id.

[3] "The proximal phalanx is the toe bone that is closest to the metatarsals. Because it is the longest of the toe bones, it is the most likely to fracture." OrthoInfo (https://orthoinfo.aaos.org/, last visited June 28, 2021) (search Foot and Ankle Tab, Toe and Foot Fractures). "Fractures may either be 'non-displaced,' where the bone is cracked but the ends of the bone are together, or 'displaced,' where the end of the broken bones have partially or completely separated." Id.

[4] "An exostosis is an extra growth of bone that extends outward from an existing bone. Common types of exostoses include bone spurs, which are bony growths also known as osteophytes. An exostosis can occur on any bone, but is often found in the feet, hip region, or ear canal. Exostoses develop over time, usually in people with joint damage from arthritis." WebMD (https://www.webmd.com/, last viewed June 28, 2021) (search exostosis).

[5] The record of admissible evidence includes defendants' affidavits and exhibits, and plaintiff's verified complaint. [Dkt. Nos. 18, 28, 43, 68-4, 71, 71-1, 71-2, 74-1, 74-4, 74-5, 114-1, -2, -3]. See Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (verified pleadings are the "equivalent of an affidavit").

1. While at FCC-Petersburg, Hemmingway was sent to the John Randolph Medical Center ("JRMC") for surgery on his great right toe and on July 9, 2017 his great right toe was amputated. That same day, x-rays of his right foot were taken and reviewed by Dr. Gerry L. Reece, Radiologist. One of Dr. Reece's impressions was that there was a "[n]ondisplaced acute fracture" of the "proximal shaft of the 5th toe proximal phalanx. Negative for dislocation." [Dkt. No. 71-1 at 3].

2. Prior x-ray examinations of Hemmingway's right foot on October 17, 2016, November 30, 2016, March 23, 2017, and May 4, 2017 did not note any fracture of the Hemmingway's 5th toe. [Dkt. No. 74-4 at 73-74, 281].

3. An x-ray exam on June 30, 2017 by Dr. Farhad Khorashadi does not mention anything about Hemmingway's 5th toe. [Dkt. No. 74-4 at 214-15].

4. The discharge instructions from JRMC do not mention Hemmingway's 5th toe. [Dkt. No. 74-4 at 209].

5. Hemmingway returned to FCC-Petersburg on July 12, 2017. [Dkt. No. 68-4 at 3].

6. On August 9, 2017, Hemmingway went to the FCC-Petersburg medical clinic ("Clinic") in order to have the surgical dressing changed. During that visit, plaintiff informed Sarah Ramsey, an EMT employed at FCC-Petersburg, that he had felt something "pop" in his right foot while he was walking on July 1, 2017. The pain he was experiencing was emanating from the area of the "lateral metatarsals of the 4th and 5th toe." FNP McClellan ordered an x-ray, which was cosigned by Dr. Piscitelli. [Dkt. No. 114-1 at 44-47].

7. The x-ray was done on August 14, 2017. Dr. Khorashadi reviewed the x-rays, and found a "[h]airline fracture non-displaced proximal phalanx of the proximal phalanx of the" 5th

toe. [Id. at 64] (*i.e.*, a minor hairline fracture of the toe bone closest to the foot). Dr. Khorashadi's findings noted there were no "other fractures" and no "joint malalignment." [Id].

8. On August 22, 2017, defendant McClellan performed a chart review of the August 14, 2017 x-rays and ordered an "ortho consult." [Id. at 43].

9. On August 23, 2017, Hemmingway was seen by PA T. Kirby. Hemmingway had already been told he had a hairline fracture, told Kirby the Motrin he was taking did not help, and requested an extra pillow to prop his foot up. Hemmingway knew he was waiting for the orthopedic consult and Kirby noted that the 5th toe appeared "to have normal alignment." [Id. at 40-41].

10. Hemmingway was seen next by McClellan on September 26, 2017. He complained of pain and McClellan noted the 5th toe was tender. McClellan ordered acetaminophen for pain and evaluated the 5th toe for "buddy tapping," but found the fracture was too low and wrapped it with "coban" (also known as an Ace bandage). [Id. at 35-36].

11. On September 27, 2017, McClellan contacted the Special Housing Unit ("SHU"), where Hemmingway was detained at that time, to confirm that Hemmingway could have compression socks and Ace bandages while in the SHU – being housed in the SHU limited his access to certain items. McClellan explained that Hemmingway had a non-displaced fracture of the 5th toe and that the compression socks and Ace bandage would provide "support" for the 5th toe. [Id. at 34].

12. On October 19, 2017, PA Kirby examined Hemmingway's 5th toe. Hemmingway did not complain of pain during this visit. [Id. at 30]. He noted there was "scant swelling," the nail was "pink," and that there was no "redness or warmth." [Id.]. Kirby recommended orthopedic

shoes (which Hemmingway said he already had) and x-rays were ordered "to assess the progress of healing." [Id.]. Dr. Piscitelli reviewed Kirby's report that same day. [Id. at 32].

13. On October 26, 2017, Dr. Maurice Yu, Radiologist, reviewed the x-rays of Hemmingway's right foot taken that day pursuant to Kirby's order. Dr. Yu found no evidence of acute fracture or joint malalignment and other than some soft tissue swelling around the great right toe, there was "no other soft tissue abnormality." [Id. at 59].

14. On November 20, 2017, PA Hall saw Hemmingway. Hemmingway complained of pain in his right 5th toe. Hall reviewed the October 26, 2017 x-ray report on Hemmingway's right foot, which had found "no radiographic evidence of acute fracture, no soft tissue abnormality, no osseous erosion." [Id. at 19]. Hall increased Hemmingway's dosage of Amitriptyline[6] to a 75mg tablet and ordered Pregabalin capsules.[7]

15. On November 30, 2017, Hall examined Hemmingway's 5th toe. Hemmingway complained of redness and swelling. Hall confirmed Hemmingway's complaints and prescribed Doxycycline Monohydrate[8] capsules/tablets to treat the cellulitis[9] he observed. [Id. at 15-16].

16. On December 8, 2017, x-rays were taken of Hemmingway's right foot. Dr. Khorashadi's report compared that radiological study to the x-ray taken of plaintiff's right foot on October 26, 2017 and found minor abnormalities. Although the report noted that plaintiff's prior hairline fracture of the proximal phalanx had "healed," it also identified a new hairline

---

[6] Amitriptyline was developed to treat depression but is commonly used to treat chronic pain. Mayo Clinic, https://www.mayoclinic.org/pain-medications/art-20045647, last viewed June 28, 2021).

[7] Pregabalin capsules are "used to relieve neuropathic pain (pain from damaged nerves) that can occur in your arms, hands, fingers, legs, feet, or toes if you have diabetes and postherpetic neuralgia." MedlinePlus, https://medlineplus.gov/, last viewed June 28, 2021) (search pregabalin).

[8] Doxycycline is used to treat infections caused by bacteria and prevents the growth and spread of bacteria. MedlinePlus, see, supra note 7 (search Doxycycline).

[9] Cellulitis is a common, "potentially serious bacterial skin infection. The affected skin appears swollen and red and is typically painful and warm to the touch." Mayo Clinic, see, supra at note 6 (search cellulitis).

fracture of the medial corner base of the same proximal phalanx of plaintiff's fifth toe, with some soft tissue swelling. The report similarly found that the remaining soft tissues of the foot were "unremarkable." [Id. at 55-56].

17. On December 18, 2017, PA Hall examined Hemmingway and noted that the cellulitis on the 5th toe had "[r]esolved." [Id. at 6]. Due to Hemmingway's complaints about pain in his 5th toe, Hall referred Hemmingway to Dr. Prakash for consideration of "arthroplasty and excision of exostosis from" Hemmingway's 5th toe. [Id. at 7].

18. Plaintiff's medical records indicate he saw medical personnel at the Clinic on January 9, 2018, January 19, 2018, January 26, 2018, and January 31, 2018 about other health matters but did not complain about his 5th toe. [Dkt. No. 114-2 at 49-56].

19. Plaintiff's medical records indicate that he next mentioned his 5th toe during a visit with FCC-Petersburg Nurse Melody Osborne on February 9, 2018. Osborne noted that during this visit, plaintiff stated that his "fifth toe is still swollen" and that his "foot burns in the fifth metatarsal joint." [Id. at 47]. Osborne examined Hemmingway's right foot and found no "swelling, redness, or inflammation" in the right foot (other than a callus), and no "signs and symptoms of infection [in] this area." [Id.]. Osborne attempted to reassure plaintiff by reminding him that the most recent x-ray showed no signs of any osteomyelitis. Plaintiff told Osborne that he wanted "a second opinion" and Osborne advised plaintiff that he had an orthopedic consult scheduled and that he could bring this issue up during the consult. [Id. at 48].

20. Dr. DiCocco performed a chart review on February 13, 2018 and recommended a consult referral to Dr. Prakash for footwear to assist Hemmingway with the healing of his hairline fracture in his 5th toe. [Id. at 46].

20. On February 16, 2018, PA Hall saw plaintiff. Hall noted that plaintiff's 5th toe had a "laceration." Concerned about potential cellulitis, Hall again prescribed plaintiff an antibiotic regimen and ibuprofen. [Id. at 42-44].

21. On March 12, 2018, plaintiff had a follow-up visit with Hall, who again noted a "wound" on plaintiff's 5th toe. On this occasion, Hall ordered a series of lab tests, including a complete blood count, all of which returned results within normal limits, including plaintiff's white blood cell count. Hall also ordered a new x-ray of plaintiff's right foot. [Id. at 40-41; 85; 97-98].

22. On March 12, 2018, Dr. Khorashadi reviewed the new x-rays and noted in his report that plaintiff's first fracture of the 5th toe had now completely healed, and that the newer fracture of the 5th toe demonstrated some partial interval bony bridging (*i.e.*, part of the healing process) and some continued soft tissue swelling. The x-ray report noted that the remaining soft tissues of the right foot were unremarkable. [Id. at 97-98].

23. On March 16, 2018, plaintiff saw Dr. Prakash, who noted that plaintiff was "belligerent and threatening" during the examination. With respect to plaintiff's 5th toe, Dr. Prakash identified a "superficial ulceration" (*i.e.*, a shallow break in the skin) with some swelling, as well as a very small callous formation that he pared back during the examination itself. Noting that plaintiff had a history of uncontrolled diabetes (and that his most recent A1C level was significantly elevated) with poor hygiene, Dr. Prakash nonetheless ordered a MRI study of plaintiff's 5th toe, which Dr. DiCocco and Assistant Health Services Administrator Boston approved less than two weeks later. [Id. at 87-88; 92].

24. On March 19, 2018, x-rays were taken of plaintiff's right foot and Dr. Khorashadi's report noted "partial bridging" of the fracture at the medial base of the proximal phalanx, the

11

healed fracture of the proximal phalanx was in "anatomic alignment," there were no new fractures, no joint malalignment, and he noted some "interval soft tissue swelling of the dorsum of the mid and proximal foot," but that the remaining soft tissue of the foot was unremarkable. [Id. at 94-96].

25. On March 21, 2018, PA Kirby saw plaintiff who told Kirby that he believed that he had a fever over the past weekend, and had experienced drainage from his right foot. Kirby's examination only revealed some discoloration of the right foot, some "moist appearing skin" in the space between plaintiff's toes with some warmth, and some soft tissue swelling in the mid-foot.[10] [Id. at 29-31]. Kirby prescribed antibiotics to treat the infection. [Id. at 30].

26. On March 29, 2018, PA Hall changed the bandage on plaintiff's right foot. [Id. at 26].

27. On May 4, 2018, plaintiff, who had been scheduled for an MRI of his 5th toe, refused any and all medical treatment from FCC-Petersburg medical staff. The refusal, inter alia, included treatment of his 5th toe. In executing this formal request, plaintiff stated that he was soon going to be transferred to a residential re-entry center to serve the remainder of his sentence, and that he would obtain non-BOP medical treatment. [Id. at 1-2; 67-69].

28. On May 10, 2018, plaintiff was released from FCC-Petersburg into a residential re-entry center and therefore no longer received medical care from BOP providers. Plaintiff was ultimately released from custody entirely on September 28, 2018. [Dkt. No. 114-3].

---

[10] During this time period, plaintiff also suffered an injury to his lower leg. The federal defendants note the lower leg injury is beyond the scope of the Fourth Circuit's mandate but noted that treatment was provided. The lower leg injury began on or about March 16, 2018, and consisted of a series of abrasions to plaintiff's ankles. [Dkt. No. 114-2 at 37]. In the weeks that followed, although FCC-Petersburg medical staff treated those abrasions, the injury worsened. On April 3, 2018, plaintiff complained of chills and medical staff members obtained a culture of the wound for testing. [Id. at 24]. On April 8, 2018, the laboratory reported abnormal results, including "heavy growth" of both Escherichia Coli ("E. Coli") and Klebsiella Pneumoniae (a bacteria often associated with the diabetic population). [Id. at 71]. After receiving these results, on April 9, 2018, Hall gave plaintiff an injection of the antibiotic cephalexin, and on April 13, 2018 prescribed plaintiff a ten-day oral antibiotic regimen. [Id. at 17; 21-23].

12

## IV. Standard of Review

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The party seeking summary judgment has the initial burden to show the absence of a material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255. Parties asserting that a fact cannot be or is genuinely disputed must comply with the requirements of Fed. R. Civ. P. 56(c) and Local Civ. R. 56(B).

Once a moving party has met its burden of proof, the non-moving party must produce specific facts to generate a disputed issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). While the court views the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997), "[o]nly disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Similarly, "[t]he mere existence of some alleged factual dispute" cannot defeat a motion for summary judgment; the dispute must be both "material" and "genuine," meaning that it "might affect the outcome of the suit under the governing law." Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001) (emphasis omitted); Braithwaite v. Hinkle, 752 F. Supp. 2d 692, 694 (E.D. Va. 2010) (unsubstantiated, conclusory claims without evidentiary support are insufficient to defeat a summary judgment motion), aff'd, 412 F. App'x 583 (4th Cir. 2011); see also Local Civil Rule 7(K)(3) (to defeat a dispositive motion, a pro se party "must identify all facts stated by the moving party with which the pro se party disagrees

and must set forth the pro se party's version of the facts by offering affidavits ... or by filing sworn statements....").

## V. Analysis

Liberally construing the three mentions of the 5th toe in the amended complaint, Hemmingway is asserting a claim of deliberate indifference to a serious medical need with respect to the treatment he received for the injury to the 5th toe. The defendants' motion for summary judgment asserts the treatment plaintiff received for his 5th toe was more than constitutionally sufficient.

In order to state an Eighth Amendment claim of inadequate medical care in prison, a plaintiff must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For purposes of this motion, the Court will assume that the injury to the 5th toe was a serious medical need. Plaintiff's claim, however, falls short on his assertion that the defendants were deliberately indifferent to his serious medical need. Farmer v. Brennan, 511 U.S. 825, 837 (1994). An assertion of mere negligence or even malpractice is not sufficient to state an Eighth Amendment violation. See Estelle, 429 U.S. at 106. Instead, "an official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks, but nevertheless disregarded them." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). Significantly, a prisoner's disagreement with medical personnel over the course of his treatment is inadequate to state a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Here, plaintiff admits that he was not aware of any issue with his 5th toe until after the x-rays taken at JRMC on July 9, 2017, where the radiologist's impression was that plaintiff had a "[n]ondisplaced acute fracture" of the "proximal shaft of the 5th toe proximal phalanx. Negative for dislocation." [Dkt. No. 71-1 at 3; 71-2 at 3]. Plaintiff had five prior similar x-rays of his right

14

foot from October 17, 2016 through June 30, 2017, and no issue with his 5th toe was identified in any of those examinations. Plaintiff complained about his 5th toe for the first time during his August 9, 2017 visit at the Clinic where he was seen by EMT Ramsey who was changing his dressing from the amputation of his right great toe. Plaintiff told Ramsey that he had felt something "pop" in his right foot while he was walking on July 1, 2017. Upon learning of the potential problem, the medical personnel immediately ordered x-rays. [Dkt. No. 114-1 at 44-47]. The x-rays were done on August 14, 2017, and the report found a "[h]airline fracture non-displaced proximal phalanx of the proximal phalanx of the" 5th toe. [Id. at 64]. On August 22, 2017, defendant McClellan performed a chart review of the August 14, 2017 x-rays and ordered an "ortho consult." [Id. at 43].

Over the next eight to nine months, plaintiff was seen seventeen times by various medical personnel at the Clinic and by contractors. See, supra at 6-10.[11] The December 8, 2017, x-rays revealed that the hairline fracture had healed, but another small fracture had occurred in the same are on a different bone of the 5th toe. Thereafter, plaintiff's new fracture was treated with antibiotics and pain medication until he refused further treatment on May 4, 2018, which precluded a scheduled MRI on his 5th toe.[12] See Gobert v. Caldwell, 463 F.3d 339, 351-52 (5th Cir. 2006) (court found that record of extensive medical treatment spanning the final two and one half months of plaintiff's incarceration and "the lack of evidence to establish the necessary culpable intent" precluded finding deliberate indifference as a matter of law).

It is readily apparent that the medical personnel providing plaintiff medical care for

---

[11] Plaintiff was seen an additional four times in January 2018 in which he did not complain about his 5th toe, and was treated for other injuries to his right leg.

[12] The treatment regimen for the new fracture on the 5th toe resulted in signs that it was healing. During his examination on March 12, 2018, Dr. Khorashadi reviewed the new x-rays and noted in his report that plaintiff's first fracture of the 5th toe had now completely healed, and that the newer fracture of the 5th toe demonstrated some partial interval bony bridging (*i.e.*, part of the healing process). [Id. at 97-98].

Hemmingway's 5th toe were not deliberately indifferent. See Santiago v. Ringle, 734 F.3d 585, 591 (6th Cir. 2013) (when "a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation") (citation omitted); see also Maglio v. Bhadja, 257 F. App'x 234, 234 (11th Cir. 2007) (allegations that an inmate suffered back pain, sought treatment, and received some treatment, but was incorrectly diagnosed and treated constitute, at most, professional negligence, and not deliberate indifference). Indeed, the hairline fracture discovered in July 2017 had healed under the care of the defendants and others by December 2017, and thereafter the care continued with the new fracture (which showed signs of healing in mid-March 2018) until the plaintiff refused any further treatment in May 2018.[13]

## VI. Conclusion

For the reasons outlined above, the defendants' motion for summary judgment [Dkt. No. 113] will be granted, and the prior Orders dated November 14, 2018 [Dkt. Nos. 86, 88], the Memorandum Opinion dated November 14, 2018 [Dkt. No. 87], and the Order dated November 30, 2018 [Dkt. No. 91] are adopted and will be reinstated. An appropriate order shall issue along side of this Memorandum Opinion.

Entered this ___1st___ day of ___July___ 2021.
Alexandria, Virginia

T. S. Ellis, III
United States District Judge

---

[13] Because the claim regarding the 5th toe is wholly without merit, there is no need for the Court to consider the defendants other arguments on administrative exhaustion or their assertion of qualified immunity.

16